UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   Case No: 6:24-cr-109-JSS-DCI

TYRONE JOSE BELTRAN LUGO

    Defendant.
_____/

## ORDER

Defendant, Tyrone Jose Beltran Lugo, moves to suppress the admission of narcotics and currency seized pursuant to a search warrant obtained after federal and state law enforcement officers conducted a protective sweep of Defendant's home. (Dkt. 40.) The Government opposes the motion. (Dkt. 50.) On September 11, 2024, the court held an evidentiary hearing and heard oral argument on the motion. (Dkt. 78.) For the reasons outlined below, the court denies the motion.

## BACKGROUND

Orange County Sheriff's Deputies Officers Paul Bennett and Felix Mangual, United States Postal Inspector Service (USPIS) Task Force Officer R. Quincy Alleyne, and Defendant's mother, Barbara Lugo-Rivera testified at the evidentiary hearing.

On February 14, 2024, a grand jury in the District Court for the District of Puerto Rico returned an indictment charging eleven individuals, including Defendant,

with conspiracy to traffic narcotics through the mail (Dkt. 40-3).[1] *See United States v. Fernandez-Garcia*, Case No. 3:24-cr-00045-ADC-10 (D.P.R. Feb. 14, 2024).[2] Specifically, Defendant was charged with one count of conspiracy to possess with intent to distribute controlled substances and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. sections 841(a)(1), (b)(1)(A), 846, and 18 U.S.C. section 2. (Dkt. 40-3.) That same day, a federal magistrate judge in Puerto Rico signed an arrest warrant for Defendant's arrest pursuant to the indictment. *Fernandez-Garcia*, Case No. 3:24-cr-00045-ADC-10 (D.P.R. Feb. 14, 2024). The next day, the warrant was forwarded to USPIS. (Dkt. 40 at 3.)

On February 15, 2024, officers from the Orange County Sherriff's Office and the United States Marshals Service executed the warrant at Defendant's residence in Orlando, Florida. (Dkt. 40-2 at 1.) Officer Bennett testified that the officers began by surveilling Defendant's residence the day of the arrest. (Dkt. 78 at 9:12.) While surveilling Defendant's residence, the officers saw Defendant's vehicle, but no other vehicles were observed at the property. (Dkt. 40 at 3; Dkt. 78 at 18:1–19:18.)

At approximately 1:00 P.M., the officers observed Defendant's mother, Barbara Lugo-Rivera, arrive at the residence. (Dkt. 40 at 4; Dkt. 78 at 19:19–21.) Seeing Ms.

---

[1] The Government alleges that Defendant and his co-conspirators trafficked large quantities of cocaine from Puerto Rico to the continental United States using the United States Postal Service. (*See* Dkt. 40-3.) USPIS's Puerto Rico division conducted the Puerto Rico investigation independent from USPIS Florida division's investigation. (Dkt. 78 at 85:20–86:5.)

[2] The court takes judicial notice of this federal criminal case. *See Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006) (explaining that a district court may take judicial notice of public records).

Lugo-Rivera, the officers decided to perform a ruse. An officer disconnected the home's electricity, knocked on the front door, and identified himself as an electric company employee. (Dkt. 78 at 110:14–112:13.) When Defendant answered the door with his mother by his side, the officer asked Ms. Lugo-Rivera to follow the officer behind the home to the electricity meter. (*Id.*) Once at the meter, the officer identified himself as law enforcement and asked if Defendant was inside the home. (*Id.*) Ms. Lugo-Rivera confirmed that Defendant was home and that he was the person who answered the door. (*Id.*) Thereafter, the officers called out to Defendant, identified themselves as law enforcement, and told Defendant to come outside. (*Id.* at 9:12–10:5.) Defendant came outside and surrendered voluntarily. (*Id.*) Officer Mangual continued to ask Ms. Lugo-Rivera if someone else was inside the home. (*Id.* at 58:12–59:2.) She said no. (*Id.*) Approximately five minutes after the officers arrested Defendant, the officers entered the residence to conduct a protective sweep. (*Id.* at 11:4–11:10.)

Officer Bennett testified that upon entry into the kitchen, Officer Bennett saw marijuana on a tray and a bag with a firearm magazine sticking out in plain view. (*Id.* at 11:16–12:21 & 43:24–50:25.) In light of this discovery, and finding no one else inside the home, the officers exited the home and secured the area while Officer Alleyne obtained a search warrant. (*Id.* at 14:15–25, 86:10–24; Dkt. 40-1 at 18.) Ms. Lugo-Rivera testified that the officers' protective sweep took approximately five minutes. (*Id.* at 113:8–10.)

Later that day, a state court judge issued a search warrant supported by Officer Alleyne's affidavit. (Dkt. 40-1.) While executing the search warrant, officers found a duffel bag containing twenty-one kilograms of cocaine, approximately $96,000 in cash, and two loaded handguns. (Dkt. 40-2.) As a result, on April 24, 2024, the grand jury returned an indictment against Defendant in the instant case charging him with one count of possession of controlled substances with intent to distribute in violation of 21 U.S.C. sections 841(a)(1) and (b)(1)(A). (Dkt. 1.)

## APPLICABLE STANDARDS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Warrantless entry into the home is therefore unreasonable subject only to a few 'jealously and carefully drawn' exceptions." *McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007) (citing *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)). A "protective sweep" conducted incident to an arrest is reasonable under the Fourth Amendment "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 337 (1990); *accord United States v. Yeary*, 740 F.3d 569, 579 (11th Cir. 2014) ("Law enforcement officers are permitted, in the context of a valid arrest, to conduct a protective sweep of a residence for officers' safety."). "To justify a protective sweep beyond the immediate location of the arrest, officers must have reasonable suspicion that the area to be swept harbors an individual posing a danger to those on the arrest scene." *United States v.*

*Yarbrough*, 961 F.3d 1157, 1163 (11th Cir. 2020) (quotation omitted); *accord Buie*, 494 U.S. at 334. "The protective sweep doctrine may apply even if the arrest occurs outside the home." *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006) (citations omitted)), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452 (2011). The court analyzes reasonableness in the Fourth Amendment context based on an objective view of the totality of the circumstances, regardless of an individual officer's state of mind. *Brigham City v. Stuart*, 547 U.S. 398, 404, (2006); *United States v. Hromada*, 49 F.3d 685, 691 (11th Cir. 1995) ("Whether or not a Fourth Amendment violation has occurred depends upon objective reasonableness in light of the facts and circumstances.").

## ANALYSIS

### 1. Protective Sweep

Defendant argues that the protective sweep was unnecessary because he was arrested outside of his residence without incident long before the sweep occurred. (Dkt. 40 at 5.) Defendant also disputes the officers' contention that marijuana and a firearm magazine were visible in plain view. (*Id.*) The Government argues that the officers were permitted to perform the sweep to ensure the officers' safety. (Dkt. 50 at 5.) The Government further argues that once the officers saw marijuana and the firearm magazine in plain view, they were allowed to sweep the residence to secure the premises for a search warrant. (*Id.*)

As an initial matter, the court recognizes that when officers arrest someone, they do not have an automatic right to conduct a protective sweep for their safety. *See Buie*,

494 U.S. at 334 ("We . . . hold that as an incident to the arrest . . . officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.") Nevertheless, the court is not persuaded by Defendant's argument that the protective sweep was unnecessary because Plaintiff was arrested outside of his residence. The Eleventh Circuit has concluded that protective sweeps inside residences that occurred incident to arrests effectuated outside residences did not violate the Fourth Amendment. *See generally United States v. Kimmons,* 965 F.2d 1001, 1009–10 (11th Cir. 1992) (holding a protective sweep was justified incident to arrest outside residence where officers had reasonable suspicion that dangerous individuals were in the defendant's apartment), *vacated on other grounds by* 508 U.S. 902 (1993); *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir. 1991) (en banc) (holding that a protective sweep of a residence after the defendant was arrested in the garage was justified); *United States v. Burgos*, 720 F.2d 1520, (11th Cir. 1983) (holding that a protective sweep of a residence after the defendant was arrested on the porch was justified); *United States v. Norman*, 638 F. App'x 934, 937–38 (11th Cir. 2016) (holding that a protective sweep of the defendant's residence immediately following her arrest pursuant to an arrest warrant was reasonable even though the defendant was arrested outside her house because the

officers saw another woman in the house, saw a caged pit bull next to an empty cage, and had reason to believe that the defendant's boyfriend, who had a criminal record was involved in the crime and could have been inside and feared arrest). The court concludes that based on the totality of the circumstances present on the day of Defendant's arrest, reasonable officers would fear that "the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene" and could thus conduct a protective sweep immediately following Defendant's arrest. *Buie*, 494 U.S. at 334. The following circumstances support this conclusion.

First, the officers were lawfully on the premises to execute the arrest warrant and could have lawfully entered Defendant's residence to execute the warrant. *United States v. Bennett*, 555 F.3d 962, 964 (11th Cir. 2009) ("[A]n arrest warrant for a suspect carries a 'limited authority' to enter a suspect's residence." (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1263–64 (11th Cir. 2000))); *see also Payton v. New York*, 445 U.S. 573, 603 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a [residence] in which the suspect lives when there is reason to believe the suspect is [inside the residence].").

Second, given the nature of Defendant's charges, an objective officer present at the time of the arrest could reasonably believe that individuals inside the home pose a danger to officer safety. *See United States v. Smith*, 131 F.3d 1392, 1397 (10th Cir. 1997) (holding that police "could rationally infer . . . that [the defendant] had accomplices in either [his] house or garage" and therefore could conduct a protective sweep when they were aware that [the defendant] was operating a methamphetamine operation at

the premises, where others were living and assisting him and where he had been observed shortly before the sweep); *United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir. 1991) (upholding a protective sweep of the defendant's residence based on officer's reasonable belief that defendant was a drug dealer with violent tendencies); *United States v. Castillo*, 866 F.2d 1071, 1081 (9th Cir. 1988) ("While the officers did not know if anyone else was in the [defendant's] apartment at the time of entry, they were aware that several persons were participants in [defendant's] conspiracy, any one of whom might be then present in the [defendant's] apartment guarding their cocaine supply or large sums of money received from prior sales . . . We are satisfied that the facts known to the officers prior to their entry demonstrate that their [protective sweep] was warranted."). Officer Bennett testified that prior to the execution of the arrest warrant, Officer Alleyne advised him of the federal indictment in the District of Puerto Rico charging Defendant with conspiracy to traffic cocaine through the mail. (Dkt. 78 at 7:24–8:7.) Officer Alleyne also informed Officer Bennett that he previously investigated Defendant for the same type of conduct. (*Id*. at 8:7–9.)

Third, although Ms. Lugo-Rivera stated that no one else was inside the home, the officers were not required to believe her. The court concludes that a reasonable officer with training and experience in apprehending individuals charged with drug trafficking could reasonably believe that she was not telling the truth and someone else who posed a threat to the officer's safety could be inside. *See Davis v. City of Apopka*, 78 F.4th 1326, 1337 (11th Cir. 2023) ("[I]n assessing whether officers acted

reasonably[,] 'it's not [the court's] role to armchair quarterback the officers' decision[.]' (quoting *United States v. Cooks*, 920 F.3d 735, 742 (11th Cir. 2019))).

Fourth, Officer Mangual testified that he was familiar with the area, and from working patrol there, he knew it to be a high-crime area. (Dkt. 78 at 56:15–57:14.) Additionally, the sweep was reasonable in scope because it was conducted quickly—in five minutes, according to Ms. Lugo-Rivera's testimony. Although Defendant disputes that Officer Bennett saw a firearm magazine and marijuana in plain view, the court has reviewed the footage from the body-worn camera, and credits Officer Bennett's testimony. (*Id*. at 11:16–12:21 & 43:24–50:25.) *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) ("[I]n a case such as this one, where the [officer's] testimon[y] [is] in direct conflict with [the defendant's] testimon[y], various courts have held that a trial judge's . . . choice of whom to believe is conclusive . . . unless the judge credits *exceedingly* improbable testimony." (emphasis in original) (quotation omitted)) (collecting cases).

Taken together, considering the totality of the circumstances, an objective officer could reasonably believe that the residence harbored an individual posing a danger to law enforcement effectuating Defendant's arrest. Therefore, the protective sweep was justified.

Accordingly, law enforcement was permitted to perform the protective sweep in which they viewed marijuana and a firearm magazine in plain view. Viewing these items in plain view formed the basis for probable cause to obtain a search warrant to search Defendant's home. *See United States v. Concepcion*, 748 F. App'x 904, 907 (11th

Cir. 2018) (citing *United States v. Williams*, 871 F.3d 1197, 1202 (11th Cir. 2017) (explaining that an officer who saw marijuana, a scale, and magazines of ammunition in plain view while conducting a protective sweep "was allowed to request a warrant to search [the defendant's residence]"). As such, the items were lawfully seized, and Defendant's Motion is denied.

### 2. Consent

Consent is an exception to the Fourth Amendment warrant requirement. *McClish*, 483 F.3d at 1240 ("Consent provides one exception to the warrant requirement.") The Government bears the burden of establishing voluntary consent, and this burden cannot be discharged by showing no more than mere acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. 543 (1968); *see also United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989) ("The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily."). Courts look to the specific facts of the case to determine if a person gave voluntary consent to search. 888 F.2d at 795. The factors courts must consider are:

> [The] voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of [the] right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

*United States v. Morales*, 893 F.3d 1360, 1367 (11th Cir. 2018) (quoting *United States v. Spivey*, 861 F.3d 1207, 1213 (11th Cir. 2017)). "Even though [Defendant's mother] [is not] the defendant in this case, th[ese] factors are still helpful here." *Id.*

The Government contends that Ms. Lugo-Rivera gave the officers consent to conduct a protective sweep of the residence. (Dkt. 50 at 2.) The evidence conflicts on this point as Defendant contends that neither he nor his mother gave the officers consent to conduct the protective sweep. (Dkt. 40 at 4–5.) At the hearing, Ms. Lugo-Rivera testified that the officers never asked her for permission to enter the residence. (Dkt. 78 at 112:14–114:11.) Officer Mangual testified that the conversation he had with Ms. Lugo-Rivera in Spanish at the scene did not include him asking for her consent to sweep the residence. (*Id.* at 66:2–76:1.) He also testified that before the officers conducted the sweep, Ms. Lugo-Rivera stated that she did not understand what was happening. (*Id.* at 75:11–21.) Based on the circumstances, and because the Government did not address any of the *Morales* factors or cite any supporting authority regarding this issue, the court concludes that the Government has not met its burden of establishing that Ms. Lugo-Rivera voluntarily consented to the protective sweep at this point. *United States v. Ruiz*, 761 F. Supp. 122, 124 (S.D. Fla. 1991) (holding that the government did not meet its burden of showing by a preponderance of the evidence that a Spanish-speaking person consented to a search of their residence that they shared with the defendant).

## CONCLUSION

Accordingly, Defendant's Motion to Suppress (Dkt. 40) is **DENIED**.

**ORDERED** in Orlando, Florida, on November 1, 2024.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record